HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TINA HART

        Plaintiff,

v.

SSA MARINE, INC. a Washington Corporation; PACIFIC MARITIME ASSOCIATION, a CALIFORNIA CORPORATION AND INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCAL 21.

        Defendant.

Case No. C08-5248 RBL

ORDER ON PENDING SUMMARY JUDGMENT MOTIONS

This matter is before the Court on the following dispositive Motions: Defendant SSA's Motion for Summary Judgment [Dkt. # 49]; Defendant Pacific Maritime Association's (PMA's) Motion for Summary Judgment [Dkt. #52], and Defendant International Longshore and Warehouse Union, Local 21 (Local 21's) Motion for Summary Judgment [Dkt. #57].

Plaintiff Tina Hart was formerly an "identified casual" longshore worker in Longview, Washington. The hierarchy of Longshoremen in the Local 21 Union runs, lowest to highest, from unidentified casual to identified casual, to Class B Registered worker to Class A Registered worker. Workers proceed up the hierarchy with experience, in terms of hours and seniority. The PMA is a multi-employer association representing shippers, stevedoring and marine terminal companies operating on the west coast. It is a party to collective bargaining agreements with the Longshore Union, including Local

21. SSA is a stevedoring company which utilizes Local 21 Longshore workers, and which is a member of the PMA.

On December 19, 2006, Hart was working in the hold of a ship, loading logs. Though she denies it, her co-worker and SSA supervisors observed her crawling on the logs, rather than walking on them, which is unsafe. SSA claims it had previously received similar reports that Hart would not, or was not able to, work safely and efficiently on logs. SSA removed Hart from the job, which, pursuant to the labor contract and rules, resulted in her being de-listed and/or put on the "do not dispatch" list (effectively terminated) from her position as an identified casual longshoreman. With the Union's assistance, Hart filed a grievance over her de-listing, which was denied at each of the three contract-mandated steps: the Joint Port Labor Relations Committee (JPLRC), a subsequent Area Arbitration before arbitrator Jean Holmes, and a review of the adverse arbitration award by the Coast Labor Relations Committee (CLRC). The gist of her position throughout these proceedings appears to be that she did not work unsafely and that she did not deserve to be de-listed in any event.

Though the Pacific Coast Longshore Contract Document (PCLCD) at all times provided a separate, expedited grievance procedure for claims of gender discrimination and/or sexual harassment (and Plaintiff Hart admits she was aware of this provision), Hart did not claim that her termination was related to her gender until after she lost before the CLRC and filed this suit.

In her Amended Complaint [Dkt. #30], Plaintiff alleges that her termination was gender-driven, and that she was subjected to a hostile work environment due to pervasive and severe gender based sexual harassment both in violation of Title VII (42 U.S.C. §2000 *et seq*.) and Washington's Law Against Discrimination (RCW. 49.60 *et. seq*.). Plaintiff makes these allegations against all Defendants. She also seeks injunctive relief in the form of an Order requiring the Defendants to register her as a longshore worker.

In response to the Defendant PMA's Motion [Dkt. #52], Plaintiff has agreed to dismiss both of her affirmative claims for damages against PMA [Dkt. #61] and claims that PMA's Motion is therefore moot [Dkt. #62]. Plaintiff similarly agreed to dismiss her claims against the Union. [Dkt. #63] Finally, Plaintiff Hart has agreed to dismiss her claim for hostile work environment sexual harassment against Defendant

SSA. [Dkt. #65 at 23] Plaintiff maintains her claim for injunctive relief[1] against all Defendants. Accordingly, all of Plaintiff's claims for damages against Defendants PMA and Local 21, and her hostile work environment claim against SSA, are DISMISSED WITH PREJUDICE.  The resolution of Plaintiff's remaining, disparate treatment claim against SSA, and her claims for injunctive relief against all defendants, is discussed below.

**Discussion**

**1.    Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**2.    Plaintiff's Disparate Treatment Claim Against Defendant SSA.**

Plaintiff claims that her de-listing was the result of her gender.  As did PMA and Local 21, SSA argues that Plaintiff cannot meet her burden of establishing her prima facie case, and that this claim must be dismissed as a matter of law.  It also argues that Plaintiff is barred by collateral estoppel from re-litigating her claim that she was working in a safe manner, that her state law claims are preempted by the LRMA, that she failed to exhaust her administrative remedies and the collective bargaining agreement's exclusive procedure for resolving discrimination claims, and that her claim is time barred under the CBA.

---

[1] Plaintiff asserts this claim under Rule 57 and Chapter 7.24 RCW.  This claim, if it is viable at all, depends on the Plaintiff's prevailing on one or more of her substantive discrimination or harassment claims.

ORDER
Page - 3

In order to establish a prima facie case of gender based disparate treatment[2], a Plaintiff must establish that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

(citing *McDonnell Douglas Corp.,* 411 U.S. at 802).

Under the *McDonnell Douglas* burden shifting formula,

[a] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994).

The ultimate burden then remains for the plaintiff to prove that the defendant's stated reason is in fact pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804.

SSA's Motion concedes (as it must) elements (1) (Plaintiff Hart was a member of a protected class) and (3) (she suffered an adverse employment action) of Plaintiff's prima facie case. It strenuously disputes, however, that Plaintiff has met her burden of establishing that she was performing according to her employer's legitimate expectations, and that employees with qualifications similar to her own were treated more favorably.

As to the former point, Plaintiff argues that she "was qualified in that she had passed the strength and agility tests designed by the employers to ascertain the worker's physical capabilities to perform longshore work." [*See* Plaintiff's Response to SSA's Motion, Dkt. #65 at 9]. Of course, passing a physical test in order to be hired in the first place is not proof, or even evidence, that the employee was subsequently performing the job in accordance with her employer's legitimate expectations. Plaintiff's declaration flatly denies the allegation that she was crawling on the logs or otherwise working in an unsafe manner. She claims she was cautious, and had only worked on logs twice before, and that while she did "put a knee down" she was not ever told not to do so.

---

[2] All parties recognize that Washington state discrimination laws are interpreted according to and consistent with analogous federal precedent. *See Hardage v. CBS Broadcasting, Inc*., 427 F.3d 1177 (9th Cir. 2005). Plaintiff's state and Federal claims are therefore addressed together.

ORDER
Page - 4

SSA provides evidence demonstrating that Plaintiff had in fact worked in the hold of a log ship *19[3]* previous times, and evidence in the form of witness testimony and SSA supervisors that Plaintiff was crawling on the logs and working in an unsafe manner. It also points to a prior incident, in which Plaintiff was warned not to take jobs for which she was not qualified, relating to her operation of a bulldozer on a salt ship. Hart admits that she was the subject of a grievance following this incident, and does not dispute that she was not operating the bulldozer properly.

As to the latter element, Defendant argues that there is no evidence that any male worker performing in the same manner as Hart was treated in a different way than Hart was. It provides evidence that other casual workers, both male and female, had been de-listed for working unsafely. It points out that a male casual who also operated the bulldozer improperly on the salt ship the same day as Plaintiff was actually punished more harshly than she was, receiving a formal reprimand. [*See* Abram Dep. at 43-44, Ex. E to Dec of Lentini; Dkt. #73; *see also* Ex. A to that Decl. ] Finally, SSA points out that Plaintiff has not and cannot show a male "comparator" who was crawling on logs in the hold of a ship and was not de-listed. Thus, it claims, she cannot make out a prima facie case of disparate treatment and her claim against SSA should be dismissed.

In an effort to make out her prima facie case on this point, Plaintiff argues only that "she was terminated while male casual workers retained their jobs." Again, however, Plaintiff's argument is not directly relevant to the element she is obligated to establish as part of her prima facie case. The issue is not whether male casual workers retained their jobs, but rather whether *similarly situated* male workers were treated more favorably. SSA argues, persuasively, that because Plaintiff does not and cannot point to a male casual worker who was working unsafely on a log ship and nevertheless retained his place on the dispatch list, she cannot meet her prima facie burden as a matter of law.

Plaintiff's Response does not directly address this argument. Instead, she alleges that other male workers[4] who were also, in her view, operating the salt ship bulldozer improperly were not disciplined, while she was. Even accepting this evidence as true, it does not assist Plaintiff in establishing that other

---

[3] *See* Munger Dep. [Dkt. #75]

[4] Plaintiff alleges that male casual workers Moe and Whiteside operated the bulldozer improperly but were not disciplined. She does not address SSA's claim or evidence that Eastlund received a letter of reprimand while she did not.

ORDER
Page - 5

male workers were treated differently after working unsafely on the logs, which was the articulated basis for her de-listing.

Even assuming that Plaintiff's evidence and argument establish her prima facie case, that does not end the summary judgment inquiry under *McDonnell Douglas*. In that event, it becomes SSA's burden to articulate a legitimate non-discriminatory basis for the Plaintiff's adverse employment action. Here, SSA's articulated basis for Plaintiff's de-listing has been consistent throughout the various administrative hearings and this case: Plaintiff Hart was effectively terminated because she could not, in SSA's view, work safely. This position is evidenced throughout the record, including the declaration of Joe Abram [Dkt. #51], and it was confirmed by the arbitrator and upheld by the CLRC. SSA has met its burden of articulating a legitimate non-discriminatory reason for its action.

Under *McDonnell Douglas*, the burden therefore shifts back to Plaintiff to demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. The ultimate burden remains for the plaintiff to prove that the defendant's stated reason is in fact pretext. *McDonnell Douglas Corp.*, 411 U.S. at 804.

Plaintiff's "pretext" evidence consists primarily of her denial[5] that she was working unsafely. Again, however, this is not the precise inquiry. The ultimate issue is whether SSA had a good faith belief that Hart was working unsafely, rather than a discriminatory motive. *See Villiarimo v Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). SSA supports its claim of good faith with testimony of Hart's co-workers the night of her termination who have testified that she was in fact working unsafely on the logs. *See* Abram Dec. At Ex. A [Dkt. #51] and Lentini Decl. and Exhibits thereto [Dkt. #73].

Plaintiff attacks SSA's allegation and evidence of its good faith belief with the following allegations, each of which is fatally flawed: She claims that Abram told Malloy that they "had to catch her in the act" in order to terminate her. This allegation is repeated throughout plaintiff's submittals, but there is no evidence that this was ever said. Hart claims that SSA subjected her to "special," "particular," and "hostile" scrutiny, but each of these claims is similarly unsupported. Hart claims that Cooper (a longshore foreman, not an SSA employee with any ability to terminate her) was a "known

---

[5] SSA argues that the arbitrator's resolution of this factual inquiry is entitled to collateral estoppel effect. While the court is inclined to agree, this issue is not addressed because SSA is entitled to summary judgment in any event. For the same reason, the parties' arguments about preemption, exhaustion and the availability of punitive damages are similarly not addressed.

sexist," but that claim is supported only by Plaintiff's own conclusory allegation. She also claims that Cooper was "hostile" to her prior to the start of her shift. But the fact that Cooper was a sexist, or hostile, does not undermine SSA's claimed good faith belief that Hart was unsafe. Nor do her other broad allegations that there was some general skepticism of women's abilities[6] on the waterfront, or that "all" of the witnesses "harbored discriminatory attitudes" toward women.

Plaintiff Hart has not produced evidence from which a reasonable jury could conclude that the reasons articulated by Defendant SSA for de-listing her were not true, but instead a pretext for discriminatory motive.

For these reasons, Defendant SSA's Motion for Summary Judgment [Dkt. #49] is GRANTED and Plaintiff's claims (including her claim for injunctive relief) against it are DISMISSED with prejudice. Because Plaintiff's only remaining claims against Defendants PMA and the Union depended on her prevailing on her discrimination claims, and those claims are dismissed, her injunctive relief claims against the remaining defendants are similarly DISMISSED with prejudice.

IT IS SO ORDERED this 19th day of October, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[6] Indeed, the Plaintiff's evidence of SSA's "discriminatory attitude" is based on a portion of the Abram Deposition, which actually states that Abram does believe women are capable of doing the longshore work. *See* Lentini Dec. at Ex. E [Dkt. #73]

ORDER
Page - 7